IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| DEMETRA MILLADGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:14-cv-00194 |
| ) | |
| OTO DEVELOPMENT, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant OTO Development's ("OTO" or "Defendant") Motion for Summary Judgment. Defendant develops and manages hotel properties, and Plaintiff Demetra Milladge ("Milladge" or "Plaintiff"), an African American, was an employee of OTO until her termination in August 2013. Plaintiff alleges she was subjected to a racially hostile work environment and her termination was the result of racial discrimination and retaliation in violation of 42 U.S.C. § 1981.

OTO develops and manages hotel properties, including nine hotels in the D.C. metro area. Plaintiff was hired by OTO in December 2009, and promoted to Director of Sales in April 2011. In this position, Milladge was responsible for managing the

Sales Department for the Sheraton Herndon Dulles Airport Hotel ("Sheraton") and the Hyatt Place Herndon-Dulles Airport East Hotel ("Hyatt"). She was in charge of a sales team tasked with attracting business into the hotels to increase revenue. She reported directly to the General Managers of these two hotels, and had a "dotted line" relationship to the Regional Director of Sales for the Mid-Atlantic Region.

Milladge's two hotels continually struggled. When compared to other area hotels within their "competitive set," the Sheraton was generally ranked fourth or fifth out of seven hotels, and the Hyatt was generally ranked fifth of seven, sometimes ranking seventh. Similarly, the RevPAR Index (revenue per available room) was continually below goal. The poor performance on the RevPAR Index led to the hotels not meeting their budget goals, with neither hotel meeting the budget goals for 2011, 2012, and the first half of 2013. Finally, the August 11, 2013 Smith Travel Report (a report that provides market information on hotel revenue performance versus a pre-established competitor set of other hotels in the marketplace) showed the two hotels were ranked each last in their competitive sets, with the Sheraton ranked seven of seven and the Hyatt ranked ten of ten for the week.

In February 2013, Defendant hired Jason Poynter, a Caucasian, as the new Regional Director of Sales for the Mid-Atlantic Region. In this position, Poynter had supervisory powers over all Directors of Sales within his region. Poynter and Plaintiff immediately conflicted, with Plaintiff disagreeing with Poynter's negative assessment of her hotels and determining within two weeks of meeting him that he was "arrogant," "cocky," and "dismissive." Poynter was often condescending and rude to Milladge, both privately and publicly, and would often demand answers from her or interrupt her. Specifically, Poynter told Milladge on different occasions "You need to be on top of this," "You have to put your big girl panties on," and "You have to have a backbone." Additionally, Poynter told Milladge to be more like Waneko Devo, the only other African American Director of Sales, telling Milladge, "[Waneko] always gets on board. She does everything I ask her to do."

As a result of this treatment, Milladge raised concerns to Sheraton General Manager, Patrick Campbell. Milladge told Campbell that she "just didn't like the way that he talked to me. I didn't like the way that he approached me. I didn't like some of his comments . . . that he was just kind of — I mean, his tone. He cut me off. That was condescending, and I just felt that there was some tension between us."

A Harassment and Discrimination Policy was contained in OTO's employee handbook, which Milladge received. The policy stated:

> If a team member believes someone has violated this policy (whether or not that person is a co-worker or a superior), the team member should bring the matter to the immediate attention of his or her supervisor or, where this is inappropriate or not practical, to the attention of the Vice President of Human Resources or the Regional Director of Operations.

Milladge did not make any complaints regarding violations of the OTO's policy.

In April 2013, Milladge met with Poynter and Regional Director of Operations Rob Osuler to discuss her team and how her hotels' performance could be improved. Poynter and Osuler told Milladge a change in strategy was needed because the current strategy was not satisfactory. On May 31, 2013, Campbell and Poynter met with Milladge to deliver a performance evaluation prepared by Campbell for the 2012 calendar year. She was rated "2" overall, meaning she "needs improvement," and she received a "2" in five key categories.

Following the August 11, 2013 Smith Travel Report, in which both of Milladge's hotels ranked last in revenue for the week, John Anderson, OTO's Chief Operating Officer, decided OTO could no longer continue with the poor revenue performance. On August 16, Milladge was informed of her termination. She was presented with a "Performance Management Form" which stated the reasons

for her termination: "Revenue vs. Budget below goal[;] RevPAR Index below goal[;] Sales Activities below goal[;] No improvement in key metrics since performance appraisal[;] Significant managerial issues and breach of confidentiality[;] STR report performance through 8/11/13 ranked both hotels last in competitor sets."

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings and evidence before the Court show no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). While the court will view the facts and inferences drawn in the light most favorable to the nonmoving party, the party opposing the motion for summary judgment must put forth specific facts showing a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006).

In Count I of her Complaint, Milladge asserts a racially hostile work environment in violation of 42 U.S.C. § 1981. To demonstrate a racially hostile work environment, Milladge must show that she was subjected to conduct that was (1) unwelcome;

(2) based on race; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and that (4) there is some basis for imposing liability on the employer. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-84 (4th Cir.2001). The claim fails for several reasons.

First, the alleged conduct was not based on Plaintiff's race. In order to prove that harassment was based on race, Milladge must show that "but for" her race, she would have been treated differently. Gilliam v. S. Carolina Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007). A conclusory statement without specific evidentiary support will be insufficient to support a claim of racially motivated harassment. Id. at 142-43; Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). "[A]bsent some independent evidence of racial animosity," the prima facie case will not be established.

Plaintiff asserts that Poynter created a racially hostile work environment by telling her "You need to be on top of this," "You have to put your big girl panties on," and "You have to have a backbone," as well as by interrupting her, demanding answers, and by being generally dismissive and condescending. None of these examples invoke race. Plaintiff argues that Poynter revealed his racial animus in this conduct by comparing Plaintiff to Waneko Devo, the only other African American Director of Sales under Poynter's supervision. However, this

conclusory inference is unsupported by independent evidence and merely concludes that the comparison was due to race. In fact, Poynter's praise of Devo undermines Plaintiff's contention that Poynter harbors racial animosity. Despite Plaintiff's objection that Poynter "expected Ms. Milladge to adopt a subservient role towards him," a supervisor is allowed to expect subservience from those who report to him. While Poynter was rude and may likely have disliked Plaintiff, "an employer is not required to like his employees." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000) (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)); see also Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006). Plaintiff has failed to show that this animosity was based on her race and has therefore failed to establish an element of racially hostile work environment.

Second, the alleged conduct was not sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. To determine whether an environment is hostile or abusive, the Court considers the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Poynter's dismissive and condescending attitude, as well as the three remarks that did not invoke race, do not constitute frequent discriminatory conduct nor severe treatment. By her own admission, Plaintiff simply did not like the attitude and style of her new supervisor, and while Poynter may have been disrespectful, "[w]orkplaces are not always harmonious locales . . . . [s]ome rolling with the punches is a fact of workplace life." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). The alleged conduct does not rise to the level of hostility necessary to be actionable under § 1981.

Third, Plaintiff has not established a basis for imposing liability on Defendant. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher v. City of Boca Raton, 524 U.S. 775, 777 (1998). However, an employer will not be held liable when it can be shown "(1) it 'exercised reasonable care to prevent and correct promptly any harassing behavior'; and (2) the plaintiff 'unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.' Spriggs, 242 F.3d at 186 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998)). Defendant is able to establish this affirmative defense.

OTO clearly satisfies the first prong. "Distribution of an anti-harassment policy provides 'compelling proof' that the company exercised reasonable care in preventing and promptly correcting sexual harassment." Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 266 (4th Cir. 2001) (quoting Lissau v. Southern Food Service, Inc., 159 F.3d 177, 182 (4th Cir.1998)). This proof may only be rebutted by showing that the "employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional." Brown v. Perry, 184 F.3d 388, 396 (4th Cir.1999). OTO established and distributed an anti-harassment policy that contained a complaint and investigation procedure, which Plaintiff received. There has been no attempt to show that this policy was adopted in bad faith or was defective.

Under the second prong, an unreasonable failure to follow a complaint procedure provided by the employer will normally suffice to show that the employee did not fulfill their corresponding obligation to take reasonable care to avoid harm. Burlington Indus., Inc., 524 U.S. at 765; Spriggs, 242 F.3d at 186 n. 9. Plaintiff failed to utilize OTO's complaint procedure. Although Milladge expressed concern to her General Manager, Patrick Campbell, she did not express concerns about racial animosity; she simply complained about Poynter's generally rude and dismissive attitude. Defendant's showing of

the two components of the affirmative defense prevents Plaintiff from establishing a basis for liability on Defendant. Accordingly, Defendant is entitled to summary judgment on Count I.

In Count II, Milladge asserts a claim of discrimination under 42 U.S.C. § 1981. The prima facie case for a violation of Title VII and § 1981 are the same. Gairola v. Com. of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). To establish a prima facie case of disparate treatment, Milladge must show that (1) she is a member of a protected class; (2) she has satisfactory job performance; (3) she was subjected to adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment. Cottman v. Rubin, 35 F. App'x 53, 55 (4th Cir. 2002). Where direct evidence of discrimination is not available, a plaintiff may prove a claim under the McDonnell Douglas "pretext" framework. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004). In this alternative approach,

> [i]f a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Assuming the employer meets this burden of production, . . . the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons "were not its true reasons, but were a pretext for discrimination."

Id. (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)); see also McDonnell Douglas Corp. v.

Green, 411 U.S. 792, 802-05 (1973). Plaintiff has not established the prima facie case for discrimination nor shown that the legitimate, nondiscriminatory reason for her termination was a mere pretext for discrimination.

First, Plaintiff has failed to prove that her job performance was satisfactory. Defendant has submitted extensive evidence to support its claim that Plaintiff was not performing to its satisfaction, including evidence that her hotels were not making their revenue goals, not performing well within their competitive sets, and not achieving their RevPAR Index targets. Plaintiff contends that these metrics were beyond her control, however, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) (quoting Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir.1980)). OTO determined that Milladge was responsible for the poor performance and acted accordingly. "[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410-11 (7th Cir.1997)).

Alternatively, Plaintiff cannot show that race was the true reason for her termination. Defendant's legitimate,

nondiscriminatory reasons for Plaintiff's termination satisfy the burden of persuasion in the *McDonnell Douglas* framework and shifts the burden back to Plaintiff to prove that the proffered reason was not the true reason for her termination but a mere pretext for discrimination. "She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). Plaintiff has not satisfied the burden of persuasion in either respect. The well-documented and continuing struggles of the two Dulles hotels makes a change in staff reasonable, and Plaintiff's position as one of the few people overseeing both hotels' direction lends credence to the decision to terminate her. And for reasons stated above, Plaintiff has not shown how Poynter's conduct amounted to racial animosity beyond her own conclusory inference.

Second, Plaintiff failed to adequately show disparate treatment between her and a similarly situated employee outside her class who received more favorable treatment. Plaintiff points to Sean Flynn as a comparable employee who, after similarly poor work performance, was treated more favorably than Plaintiff because he was only terminated after being placed on an action plan and given a reasonable time to improve the

performance of his hotels. However, Flynn was not a similarly situated employee. To make a comparison, it must be shown that "the employees dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haywood v. Locke, 387 Fed. Appx. 355, 359 (4th Cir. 2010). Although Flynn did have a "dotted line" relationship to Poynter, he did not report to the same General Managers as Plaintiff. Therefore, Plaintiff has failed to show that Flynn is a similarly situated employee that was treated more favorably. Accordingly, Defendant is entitled to summary judgment on Count II.

In Count III, Milladge asserts that OTO retaliated against her in violation of 42 U.S.C. § 1981. To establish a prima facie claim of retaliation, Milladge must show (1) that she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004). Plaintiff did not engage in a protected activity. In order to engage in a protected activity, Plaintiff must only "prove that [she] opposed an unlawful employment practice which [she] reasonably believed had

occurred or was occurring." Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003) (quoting Bigge v. Albertsons, Inc., 894 F.2d 1497, 1503 (11th Cir.1990)). "Generalized complaints about disputes or annoyances in the workplace are insufficient." Conyers v. Virginia Hous. Dev. Auth., 927 F. Supp. 2d 285, 295 (E.D. Va. 2013) aff'd, 533 F. App'x 342 (4th Cir. 2013) (quoting Mixon v. Charlotte-Mecklenburg Sch., 3:11-CV-228-MOC-DSC, 2011 WL 5075808, at *6, (W.D.N.C. Aug. 5, 2011)). The only complaint to a supervisor that Plaintiff made was about Poynter's general demeanor, making no claims or inferences that his behavior was rooted in racial animosity and in no way invoking Title VII or § 1981 protections. Therefore, Plaintiff did not engage in a protected activity and has not established the prima facie case for retaliation under § 1981. Accordingly, Defendant is entitled to summary judgment on Count III.

For the aforementioned reasons, this Court finds that summary judgment should be granted in favor of the Defendant. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
September __, 2014
October